COLORADO COURT OF APPEALS                                    **2016COA138**

---

Court of Appeals No. 15CA1371
Boulder County District Court No. 14CV30681
Honorable Judith L. Labuda, Judge

---

Public Service Company of Colorado, a Colorado corporation,

Plaintiff-Appellant,

v.

City of Boulder, Colorado; City Council of the City of Boulder, Colorado;
Matthew Appelbaum, in his official capacity as Mayor; George Karakehian, in
his official capacity as Mayor Pro Tem; Macon Cowles, in his official capacity as
a member of the City Council; Suzanne Jones, in her official capacity as a
member of the City Council; Lisa Morzel, in her official capacity as a member of
the City Council; Tim Plass, in his official capacity as a member of the City
Council; Andrew Shoemaker, in his official capacity as a member of the City
Council; Sam Weaver, in his official capacity as a member of the City Council;
and Mary Young, in her official capacity as a member of the City Council,

Defendants-Appellees.

---

JUDGMENT VACATED

Division I
Opinion by JUDGE PLANK*
Taubman and Freyre, JJ., concur

Announced September 22, 2016

---

Faegre Baker Daniels, LLP, John R. Sperber, Daniel D. Williams, Matthew D.
Clark, Boulder, Colorado, for Plaintiff-Appellant

Thomas A. Carr, City Attorney, David J. Gehr, Deputy City Attorney, Kathleen
E. Haddock, Senior Assistant City Attorney, Deborah S. Kalish, Senior
Assistant City Attorney, Boulder, Colorado, for Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     Plaintiff, Public Service Company of Colorado (Xcel), appeals the district court's judgment dismissing its complaint against defendants, the City of Boulder (City), the Boulder City Council (Council), and various elected officials. We vacate the judgment.

## I.     Background

¶ 2     At a November 2011 election, the City voters approved an amendment to the Boulder Home Rule Charter: Article XIII, "Light and Power Utility." The amendment's section 178, in particular, authorized the creation of a new light and power utility if the Council could demonstrate, with verification by a third-party independent expert, that the utility could

> acquire the electrical distribution system in Boulder and charge rates that do not exceed those rates charged by Xcel Energy at the time of acquisition and that such rates will produce revenues sufficient to pay for operating expenses and debt payments, plus an amount equal to twenty-five percent (25%) of the debt payments, and with reliability comparable to Xcel Energy and a plan for reduced greenhouse gas emissions and other pollutants and increased renewable energy.[1]

Charter § 178(a).

---

[1] In November 2013, the voters added another requirement — that a $214,000,000 debt limit could not be exceeded in the acquisition of Xcel's assets. Charter § 188(a).

¶ 3     Charter section 178(a) also authorized the Council "to establish, by ordinance, a public utility under the authority in the state constitution and the city charter . . . ."

¶ 4     On August 20, 2013, the Council passed Ordinance 7917 (the First Ordinance), which (1) accepted the report of a third-party evaluator who concluded that the conditions precedent to the utility's creation (listed above) had been satisfied; (2) stated that it was not creating a light and power utility, and any future desire to do so would be by subsequent legislative action; and (3) recognized that revisions to the "Base Materials" provided by the City might be necessary, and instructed the city manager to further refine them accordingly.

¶ 5     On May 6, 2014, the Council passed Ordinance 7969 (the Second Ordinance), which stated its intention "to establish the light and power utility . . . ." Twenty-eight days later, Xcel filed a complaint with respect to the Second Ordinance, seeking declaratory judgment under C.R.C.P. 57 or, in the alternative, review under C.R.C.P. 106(a)(4).

¶ 6     The City filed a motion to dismiss Xcel's complaint pursuant to C.R.C.P. 12(b)(1), arguing that Xcel's complaint attempted to

challenge the First Ordinance by purporting to challenge the Second Ordinance and, because the time in which to bring such a challenge against the First Ordinance had passed under Rule 106(b), the district court lacked subject matter jurisdiction. The district court agreed with the City's characterization of Xcel's complaint, and dismissed the complaint for lack of subject matter jurisdiction due to the time bar. We disagree.

## II.     Standard of Review

¶ 7      Issues concerning subject matter jurisdiction may be raised at any time under C.R.C.P. 12(b)(1). *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001). When a defendant raises such a challenge, the plaintiff has the burden of proving jurisdiction, and the district court may make appropriate factual findings regarding the issue. *See id.* Further, Rule 12(b)(1) permits the court "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993)). We review the trial court's legal conclusions in dismissing a complaint for lack of subject matter jurisdiction de novo. *Wallin v. Cosner*, 210 P.3d 479, 480 (Colo. App. 2009).

### III.    Analysis

¶ 8    Initially, we note that the parties dispute which ordinance was challenged in Xcel's complaint, and therefore which ordinance is at issue on appeal. Xcel asserts that it is challenging the establishment of the light and power utility, which occurred when the Second Ordinance was passed; the City, however, asserts that the allegations in the complaint focus on matters decided solely in the First Ordinance, i.e., the determination that the conditions precedent to establishment were satisfied. Regardless, we address each of the ordinances, and reach the same conclusion for both.

¶ 9    On appeal, Xcel contends that the district court wrongly dismissed its complaint for lack of jurisdiction with respect to the twenty-eight-day time limit of C.R.C.P. 106(a)(4). In doing so, Xcel argues that the First Ordinance (1) was not final, as required under C.R.C.P. 106(b), and (2) was legislative, not quasi-judicial; according to Xcel, each of these conclusions make the time limit of Rule 106(a)(4) inapplicable to its complaint.

#### A.    The Ordinances Were Not "Final" Actions

¶ 10    We first address, as a threshold issue, the finality of the ordinances upon which the application of the time bar in Rule

106(b) depends. Xcel contends that the First Ordinance was not final because (1) it did not establish the utility; (2) it referenced additional revisions to be made in planning the utility; and (3) the City made such additional revisions after the First Ordinance was passed. We agree.

¶ 11 Rule 106(b) provides that a complaint seeking review under the rule should be filed in the district court no later than twenty-eight days after the "final decision of the body or officer." C.R.C.P. 106(b). This time period begins to run at the "'point of administrative finality,' which occurs when 'the action complained of is complete,' leaving 'nothing further for the agency to decide.'" *Carney v. Civil Serv. Comm'n*, 30 P.3d 861, 863 (Colo. App. 2001) (quoting *3 Bar J Homeowners Ass'n v. McMurry*, 967 P.2d 633, 634 (Colo. App. 1998)); *see also Baker v. City of Dacono*, 928 P.2d 826, 827 (Colo. App. 1996); *Cadnetix Corp. v. City of Boulder*, 807 P.2d 1253, 1254 (Colo. App. 1991). Therefore, the primary issue here is whether the First Ordinance had reached the point of "finality."

¶ 12 "[A] final judgment or decision generally . . . ends the particular action in which it is entered, leaving nothing further to be done to completely determine the rights of the parties, . . . [and]

5

therefore necessarily depends upon the scope and nature of the proceeding and rights at issue." *Citizens for Responsible Growth v. RCI Dev. Partners, Inc.*, 252 P.3d 1104, 1106-07 (Colo. 2011).

¶ 13     Here, neither ordinance establishes a final utility plan nor resolves the issues related to the preconditions necessary to establish such a plan.

¶ 14     The First Ordinance demonstrated its lack of finality in recognizing, by its terms, the ongoing process and assessment required to complete the utility plans.  That ordinance stated that it "shall not be construed to create a light and power utility" and directed the city manager to "continue refinement of the Base Materials for use in creating and operating a light and power utility . . . ."  Although the Second Ordinance purported to establish that the conditions precedent had been satisfied (pursuant to the Charter), this statement must not be read out of context.  Reading the Second Ordinance as a whole, the statements directing further refinement of the plans and deferring creation of the utility for later legislative action show the City intended to make further changes and indicate that this action was not final.

¶ 15    Furthermore, uncertainty lingers since Boulder has continued supplemental modeling concerning the utility's feasibility after the passage of the First Ordinance. There remain significant unresolved issues as to the financial viability and reliability of the utility. For example, based on the "initial modeling" it has completed thus far, the City calculated it could meet the requirements of the First Ordinance by including service to customers outside the Boulder city limits; however, this calculation assumed the inclusion of such customers (contrary to the Public Utility Commission's prior rulings rejecting the City's petition to include customers outside the city limits), with no demonstration that the metrics could be met if the utility is limited to Boulder residents.

¶ 16    Such ongoing assessments leave much more to be done. Therefore, the First Ordinance was not a final action.

¶ 17    The Second Ordinance, authorizing the establishment of the utility, relies on the findings of the First Ordinance that the City adequately met the conditions precedent. As previously discussed, this appears to be an ongoing process subject to continuing revisions even since the First Ordinance's passage. Thus, for the

same reasons the First Ordinance was not final, the Second Ordinance also lacks finality.

¶ 18     For these reasons, we conclude that neither ordinance was a "final" action under Rule 106(b). In the absence of finality, judicial review under Rule 106 is premature. Accordingly, we disagree with the district court that Xcel's complaint was time barred and, therefore, the district court erred in dismissing the complaint on this basis.

## B.     Declaratory Judgment

¶ 19     Xcel also sought review under C.R.C.P. 57(b). Xcel's complaint sought a declaratory judgment finding the Second Ordinance void as a matter of law due to its failure to meet the conditions precedent required by the Charter. The district court held that it lacked jurisdiction over this claim based on its application of the time bar of Rule 106(b).[2] We agree, but on other grounds, that the district court could not enter a declaratory judgment.

¶ 20     For the reasons stated above, Rule 106 does not apply due to the lack of finality of the ordinances. Lack of finality may also be a

---

[2] Claims for declaratory relief under C.R.C.P. 57 are subject to the time limitations of C.R.C.P. 106(b). *See JJR 1, LLC v. Mt. Crested Butte,* 160 P.3d 365, 369 (Colo. App. 2007).

basis for a court's refusal to enter a declaratory judgment. Rule 57(f) states: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Due to the lack of finality of the ordinances in this case, entry of a declaratory judgment at this point is also premature.

### C. Quasi-Judicial Versus Legislative Action

¶ 21 The parties dispute, and discuss extensively in their briefs, whether the passing of the First Ordinance was a quasi-judicial or quasi-legislative action. Because we find that the ordinance itself was not a final action, we need not reach the issue of whether it was quasi-judicial or quasi-legislative.

### IV. Conclusion

¶ 22 We conclude that the trial court did not have jurisdiction because the ordinances were not final actions and that declaratory relief was premature. The judgment is vacated.

JUDGE TAUBMAN and JUDGE FREYRE concur.