Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 18, 2018

**2018 CO 59**

**No. 16SC894, City of Boulder v. Public Service Company of Colorado—Declaratory Judgment Actions—C.R.C.P. 57—C.R.C.P. 106—Municipal Ordinances—Finality.**

This case arises out of respondents' challenge to the petitioner city's attempt to create a light and power utility.  Respondents assert that the ordinance establishing the utility violates the city's charter.  Respondents thus seek a declaratory judgment deeming that ordinance null and void.  The city asserts that the respondents' complaint is, in reality, an untimely C.R.C.P. 106 challenge to a prior ordinance by which the city had concluded that it could meet certain prerequisites for the formation of the utility as prescribed by the city charter.  The district court agreed with the city and dismissed respondents' complaint for lack of jurisdiction.

A division of the court of appeals, however, vacated the district court's judgment, concluding that neither of the pertinent ordinances was final and that therefore, respondents' complaint was premature.

The supreme court now reverses the division's decision and remands the case for further proceedings on respondents' declaratory judgment claim.  Although the court agrees with the city that the division erred, contrary to petitioners' position and the

premises on which the courts below proceeded, the court agrees with respondents that the complaint asserted a viable and timely claim seeking a declaration that the ordinance establishing the utility violated the city charter.  Accordingly, the court concludes that the district court had jurisdiction to hear respondents' declaratory judgment claim, and the court remands the case to allow that claim to proceed.

**2018 CO 59**

**Supreme Court Case No. 16SC894**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1371

**Petitioners:**
The City of Boulder, Colorado; the City of Council for the City of Boulder, Colorado; Suzanne Jones, in her official capacity as Mayor; Aaron Brockett, in his official capacity as Mayor Pro Tem; and Cindy Carlisle, Jill Alder Grano, Lisa Morzel, Mirabai Kuk Nagle, Bob Yates, Sam Weaver, and Mary Young, in their official capacities as members of the City Council,

v.

**Respondent:**

Public Service Company of Colorado, a Colorado corporation.

**Judgment Reversed**
*en banc*
June 18, 2018

**Attorneys for Petitioners:**
Boulder City Attorney's Office
Thomas A. Carr, City Attorney
David J. Gehr, Deputy City Attorney
Kathleen Haddock, Senior Assistant City Attorney
 *Boulder, Colorado*

Holland & Hart LLP
Marcy G. Glenn
 *Denver, Colorado*

Hamre, Rodriguez, Ostrander & Dingess, PC
James Birch
 *Denver, Colorado*

**Attorneys for Respondent:**
Faegre Baker Daniels, LLP
John R. Sperber
*Denver, Colorado*
Faegre Baker Daniels, LLP
Matthew D. Clark
*Boulder, Colorado*

**Attorney for Amicus Curiae Colorado Municipal League:**
Dianne M. Criswell
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1   This case arises out of respondent Public Service Company of Colorado's ("Xcel's") challenge to the City of Boulder's attempt to create a light and power utility. Xcel asserts that the ordinance establishing the utility, Ordinance No. 7969 (the "Utility Ordinance"), violates article XIII, section 178 of Boulder's City Charter. Xcel thus seeks a declaratory judgment deeming the Utility Ordinance "ultra vires, null, void, and of no effect." Petitioners, the City of Boulder, its mayor, mayor pro tem, and city council members (collectively, "Boulder"), assert that Xcel's complaint is, in reality, a C.R.C.P. 106 challenge to a prior ordinance, Ordinance No. 7917 (the "Metrics Ordinance"), by which Boulder had concluded that it could meet certain metrics regarding the costs, efficiency, and reliability of such a utility. Boulder contends that this challenge was untimely and thereby deprived the district court of jurisdiction to hear Xcel's complaint.

¶2   The district court agreed with Boulder and dismissed Xcel's complaint. Xcel appealed, and in a unanimous, published decision, a division of the court of appeals vacated the district court's judgment. Pub. Serv. Co. v. City of Boulder, 2016 COA 138, ¶ 22, 410 P.3d 680, 684. As pertinent here, the division, like the district court, presumed that Xcel was principally proceeding under C.R.C.P. 106. See id. at ¶¶ 10–18, 410 P.3d at 683–84. The division concluded, however, that neither the Metrics Ordinance nor the Utility Ordinance was final, and therefore, Xcel's complaint was premature. Id. at ¶ 18, 410 P.3d at 684. The division thus vacated the district court's judgment. Id. at ¶ 22, 410 P.3d at 684.

3

¶3     Boulder petitioned for certiorari, principally arguing that the division erred in concluding that the Metrics Ordinance and the Utility Ordinance were not final for purposes of judicial review under C.R.C.P. 106. We granted that petition and now reverse.[1]

¶4     Although we agree with Boulder that the division erred, contrary to Boulder's position and the premises on which the courts below proceeded, we agree with Xcel that its complaint asserted a viable and timely claim seeking a declaration that the Utility Ordinance violated Boulder's City Charter. Accordingly, we conclude that the district court had jurisdiction to hear Xcel's declaratory judgment claim challenging the Utility Ordinance, and we remand this case to allow that claim to proceed.

## I.  Facts and Procedural History

¶5     Several years ago, Boulder's citizens voted to add a section to the City Charter that would permit the City Council to establish a public power utility if certain conditions were satisfied. See Boulder, Colo., Charter art. XIII, § 178 (2018). That section provides, in pertinent part:

---

[1] Specifically, we granted certiorari to consider the following issues:

1. Whether the court of appeals erred in concluding that two Boulder municipal ordinances were not final actions for the purpose of judicial review under C.R.C.P. 106.

2. Whether the court of appeals erred in vacating the district court's judgment rather than remanding the case for further findings regarding subject matter jurisdiction.

4

The city council, at such time as it deems appropriate, subject to the conditions herein, is authorized to establish, by ordinance, a public utility under the authority in the state constitution and the city charter to create light plants, power plants, and any other public utilities or works or ways local in use and extent for the provision of electric power. The city council shall establish a light and power utility only if it can demonstrate, with verification by a third-party independent expert, that the utility can acquire the electrical distribution system in Boulder and charge rates that do not exceed those rates charged by Xcel Energy at the time of acquisition and that such rates will produce revenues sufficient to pay for operating expenses and debt payments, plus an amount equal to twenty-five percent (25%) of the debt payments, and with reliability comparable to Xcel Energy and a plan for reduced greenhouse gas emissions and other pollutants and increased renewable energy . . . .

Boulder, Colo., Charter art. XIII, § 178(a).

¶6 Pursuant to this provision, Boulder began to explore its ability to satisfy the metrics set forth in the Charter (the "Charter Metrics"). To this end, Boulder city employees and consultants presented the Boulder City Council with an analysis that demonstrated that various modeled scenarios would satisfy the Charter Metrics. The city employees and consultants thereafter provided additional information requested by the Council (the "Base Materials"). The Council then directed the city manager to select a third-party independent expert to verify that the Base Materials demonstrated that Boulder could meet the Charter Metrics. The manager did so, and the independent expert reviewed the Base Materials and subsequently verified that the Base Materials demonstrated that Boulder could meet these requirements.

¶7 Based on the independent expert's report, the City Council passed the Metrics Ordinance, accepting the expert's findings and concluding that the Charter Metrics had been satisfied. On the same day it passed the Metrics Ordinance, the City Council also

passed an ordinance authorizing the city manager to negotiate for the acquisition of various pieces of real property and equipment that would be needed to construct the utility. The City Council authorized the city manager to acquire these interests and assets through the exercise of the power of eminent domain and to initiate condemnation proceedings to do so. Xcel did not challenge either of these ordinances.

¶8 Approximately eight months later, the City Council passed the Utility Ordinance, amending the Boulder Revised Code to "establish and define the light and power utility" of the city of Boulder. Less than one month later, Xcel filed the present action, in which it principally sought a declaration, pursuant to C.R.C.P. 57, that the Utility Ordinance violated the City Charter. Specifically, Xcel alleged that the City Council had exceeded the limits on its authority as set forth in section 178 of Title XIII of the Charter because the models on which Boulder had relied incorrectly assumed that (1) Boulder could unilaterally decide to serve and receive revenue from more than 7,000 Xcel electricity customers located outside the city limits and (2) as a result, costs to separate and reconnect the Xcel electric system after formation of the utility would be minimal. In fact, Xcel asserted, after Boulder passed the Metrics Ordinance, the Public Utilities Commission ("PUC") had concluded that Boulder did not have the right to act unilaterally to serve customers outside Boulder's city limits. Xcel alleged that because all of the models on which Boulder had relied depended on assumptions regarding service rights and separation costs that were inconsistent with the PUC's orders, Boulder could not then determine whether it could meet the Charter Metrics. Xcel thus sought a declaration that "as a matter of law, the Utility Ordinance, being in violation of

6

the Charter, is <u>ultra vires</u>, null, void, and of no effect." In the alternative, Xcel asserted a claim for judicial review of the Utility Ordinance under C.R.C.P. 106(a)(4). Xcel made clear, however, that it asserted this claim only in the event that the district court determined declaratory relief to be unavailable.

¶9 Boulder moved to dismiss Xcel's complaint, arguing that (1) in substance, Xcel's complaint was a C.R.C.P. 106 challenge to the Metrics Ordinance; (2) this challenge was untimely; and (3) because the timing requirement was jurisdictional, the district court lacked subject matter jurisdiction to review Xcel's complaint.

¶10 The district court ultimately agreed and dismissed Xcel's complaint, concluding that the untimeliness of Xcel's C.R.C.P 106 challenge to the Metrics Ordinance deprived that court of jurisdiction.

¶11 Xcel appealed, and in a unanimous, published opinion, a division of the court of appeals vacated the district court's judgment. <u>See</u> <u>Pub. Serv. Co.</u>, ¶ 22, 410 P.3d at 684. Like the district court, the division construed Xcel's complaint as having been principally asserted under C.R.C.P. 106. <u>See</u> <u>id.</u> at ¶¶ 10–18, 410 P.3d at 683–84. Unlike the district court, however, the division concluded that neither the Metrics Ordinance nor the Utility Ordinance was final for purposes of C.R.C.P 106(b). <u>Id.</u> at ¶ 18, 410 P.3d at 684. The division reasoned that "neither ordinance establishes a final utility plan nor resolves the issues related to the preconditions necessary to establish such a plan." <u>Id.</u> at ¶ 13, 410 P.3d at 683. The division then briefly acknowledged that Xcel had also sought a declaratory judgment, but relying on its C.R.C.P. 106 analysis, the division concluded that the declaratory judgment claim also failed due to the lack of finality of

the ordinances at issue.  <u>Id.</u> at ¶¶ 19–20, 410 P.3d at 684.  For these reasons, the division concluded that the district court lacked jurisdiction, and the division vacated the judgment.  <u>Id.</u> at ¶ 22, 410 P.3d at 684.

¶12   Boulder then petitioned this court for a writ of certiorari, and we granted that petition.

## II.  Analysis

¶13   We begin by discussing the applicable standard of review.  We then discuss the differing characterizations of Xcel's claim for relief adopted by the parties and the courts below, and we conclude that, as Xcel contends, its complaint principally asserted a claim for declaratory relief under C.R.C.P. 57 challenging the Utility Ordinance, not a claim for judicial review under C.R.C.P. 106.  Finally, we consider whether the district court had jurisdiction over Xcel's declaratory judgment complaint, and we conclude that it did.  We thus reverse the division's judgment and remand this case for further proceedings.

## A.  Standard of Review

¶14   C.R.C.P. 12(b)(1) provides for a motion to dismiss for lack of subject matter jurisdiction.  <u>See</u> <u>Trinity Broad. of Denver, Inc. v. City of Westminster</u>, 848 P.2d 916, 924 (Colo. 1993).  "If the motion is a factual attack on the jurisdictional allegations of the complaint, such as the timeliness of the notice [in a governmental immunity case], the trial court may receive any competent evidence pertaining to the motion."  <u>Id.</u>  The plaintiff bears the burden of proving jurisdiction, and "the standard of appellate review is highly deferential."  <u>Id.</u> at 925.  When all of the relevant evidence has been presented

to the trial court, the appellate court can apply C.R.C.P. 12(b)(1) to the record before it and need not remand for additional evidentiary proceedings. Id. In addition, when, as here, the parties dispute only the characterization of the complaint at issue and not the jurisdictional facts alleged within it, the trial court can decide the jurisdictional question as a matter of law, and our review is de novo. See Medina v. State, 35 P.3d 443, 452 (Colo. 2001); cf. Lakeview Assoc. v. Maes, 907 P.2d 580, 583–84 (Colo. 1995) ("When . . . the controlling facts are undisputed, the legal effect of those facts constitutes a question of law.").

## B. The Nature of Xcel's Complaint

¶15     As an initial matter, we must determine the nature of Xcel's complaint because, as noted above, Xcel maintains that its complaint asserted a viable and timely declaratory judgment claim while Boulder and both courts below have proceeded on the assumption that Xcel's complaint was, in substance, a claim for judicial review under C.R.C.P. 106.

¶16     We begin with the allegations of the complaint itself. The first sentence of paragraph one of the complaint stated, "Public Service brings this action for declaratory relief and an Order voiding the City of Boulder's May 6, 2014, ordinance creating a light and power utility [i.e., the Utility Ordinance]." That paragraph went on to allege that the Utility Ordinance was "ultra vires because the Boulder City Council . . . exceeded the voter-mandated limits on its authority set forth in the 2011 amendment to the City's Charter." The complaint explained that Boulder was required to demonstrate and verify that it could satisfy the Charter Metrics before it created the utility, and the

9

complaint noted that Boulder could not do so <u>at the time</u> that it created the utility. Therefore, Xcel asserted, the Utility Ordinance was "<u>ultra vires</u>, null, void, and of no effect."

¶17 The complaint further alleged, "This lawsuit concerns the City's unlawful decision to adopt Ordinance No. 7969 (the "Utility Ordinance"), which purports to establish a light and power utility," and the complaint reiterated,

> Plaintiff seeks declaratory relief concerning the Utility Ordinance under Colo. R. Civ. P. 57. In the alternative, and only if the Court determines that a claim for declaratory relief is unavailable, Plaintiff also seeks judicial review under Colo. R. Civ. P. 106(a)(4) of the City's decision to adopt the Utility Ordinance.

¶18 Consistent with the foregoing, the complaint proceeded to assert two claims for relief. The first was a claim for a declaratory judgment under C.R.C.P. 57, alleging, "Public Service is entitled to a declaration that, as a matter of law, the Utility Ordinance, being in violation of the Charter, is <u>ultra vires</u>, null, void, and of no effect." The second was an alternative claim for judicial review of the Utility Ordinance under C.R.C.P. 106(a)(4), which claim was expressly asserted "only if the Court determines that declaratory relief is unavailable."

¶19 In sum, as Xcel asserts, contrary to Boulder's assertion and the assumption of the courts below that Xcel's complaint was a claim for C.R.C.P. 106(a)(4) review of the Metrics Ordinance, the complaint on its face principally alleged a claim for a declaratory judgment that the <u>Utility Ordinance</u> was void under the City Charter. Only in the alternative did Xcel assert a C.R.C.P. 106(a)(4) claim, and this alternative claim, too, was directed to the Utility Ordinance, <u>not</u> the Metrics Ordinance.

10

¶20    This does not end our inquiry, however, because we acknowledge that we must look to the substance, not the form, of Xcel's complaint.  Hutchinson v. Hutchinson, 367 P.2d 594, 596 (Colo. 1961) ("The substance of the claim rather than the appellation applied to the pleading by the litigant is what controls.  If from the allegations of the complaint the plaintiff is entitled to relief under any 'theory,' it is sufficient to state a claim.").  Looking at the substance of Xcel's complaint confirms that the complaint principally sought a declaratory judgment as to the Utility Ordinance, not judicial review of either the Metrics Ordinance or the Utility Ordinance.

¶21    To be sure, Xcel's complaint discussed Boulder's Base Materials and the history of the Metrics Ordinance.  The complaint also argued at some length as to why the work done by Boulder and its independent expert did not satisfy the Charter Metrics.

¶22    As we understand it, however, the complaint did not make these allegations in order to challenge the Metrics Ordinance.  Indeed, Xcel concedes that it is not challenging that ordinance, and Xcel does not appear to dispute that such a challenge would be untimely.  Rather, Xcel's position is that notwithstanding the passage of the Metrics Ordinance, Boulder has not actually satisfied the Charter Metrics, and therefore, the passage of the Utility Ordinance violated the City Charter.

¶23    For these reasons, we disagree with Boulder's contention that Xcel is asserting an untimely C.R.C.P. 106(a)(4) claim relating to the Metrics Ordinance.  We likewise conclude that the district court erred in construing Xcel's complaint as a C.R.C.P. 106(a)(4) claim for judicial review of the Metrics Ordinance and in determining that that claim was untimely, thus depriving the court of subject matter jurisdiction.

11

And we conclude that the division erred in construing Xcel's claim as a claim for judicial review under C.R.C.P. 106(a)(4) and in deciding that the district court lacked jurisdiction because neither the Metrics Ordinance nor the Utility Ordinance was final for purposes of that rule.

## C. Xcel's Declaratory Judgment Claim

¶24 The question thus becomes whether the division erred in concluding that, to the extent Xcel's claim was a claim for a declaratory judgment, it still failed due to the lack of finality of the Metrics Ordinance and the Utility Ordinance. Pub. Serv. Co., ¶¶ 19–20, 410 P.3d at 684. For several reasons, we believe that the division erred in so concluding.

¶25 First, we note that the division's conclusion relied almost exclusively on its analysis of Xcel's claims under C.R.C.P. 106. Because, for the reasons discussed above, we disagree with that analysis, we do not agree that the same analysis can be applied to preclude Xcel's declaratory judgment claim.

¶26 Second, we disagree with the division's conclusion that Xcel's declaratory judgment claim rises or falls with its purported C.R.C.P. 106 claim. To the contrary, we must consider Xcel's declaratory judgment claim on its own merits.

¶27 C.R.C.P. 57 provides, in pertinent part:

> (a) Power to Declare Rights, etc.; Force of Declaration. District and superior courts within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceedings shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

(b) Who May Obtain Declaration of Rights. Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

. . . .

(e) Not a Limitation. The enumeration in sections (b), (c), and (d) of this Rule does not limit or restrict the exercise of the general powers conferred in section (a) of this Rule, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

(f) When Court May Refuse to Declare Right. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

¶28    This rule is "remedial in nature and should be liberally construed to 'afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" Toncray v. Dolan, 593 P.2d 956, 957 (Colo. 1979) (quoting C.R.C.P. 57(k); § 13-51-102, C.R.S. (1973)). As pertinent here, this court has long acknowledged that litigants can use C.R.C.P. 57 to request the resolution of questions regarding the validity or interpretation of a piece of legislation. See, e.g., Denver Ctr. for the Performing Arts v. Briggs, 696 P.2d 299, 305–06 (Colo. 1985) (noting that the plaintiff had properly challenged the constitutional validity of a tax ordinance in a declaratory judgment action under C.R.C.P. 57); Toncray, 593 P.2d at 957 ("One whose rights are affected by a statute may have its construction or validity determined by declaratory judgment.").

¶29    This principle applies with equal force to a dispute over the validity of a municipal ordinance. See Native Am. Rights Fund, Inc. v. City of Boulder, 97 P.3d 283,

13

287 (Colo. App. 2004) (noting that "constitutional questions and challenges to the overall validity of a statute or ordinance are more properly reviewed under C.R.C.P. 57").

¶30 In particular, a litigant may properly bring a declaratory judgment action challenging a municipal ordinance as violative of a city's charter. A city's charter is like its constitution, and all ordinances that a city passes must comply with the terms of its charter. See Flanders v. City of Pueblo, 160 P.2d 980, 981 (Colo. 1945); Olson v. Hillside Cmty. Church SBC, 124 P.3d 874, 879 (Colo. App. 2005); see also City of Colo. Springs v. Securcare Self Storage, Inc., 10 P.3d 1244, 1247 (Colo. 2000) (noting that the Colorado constitution grants home-rule cities broad legislative authority to draft and implement their charters and ordinances regarding local and municipal matters and that a home-rule city may adopt a zoning code as it chooses, as long as the code conforms with constitutional limitations and the city's own charter and ordinances); Service Oil Co. v. Rhodus, 500 P.2d 807, 811 (Colo. 1972) (noting that a home-rule city has "every power possessed by the General Assembly as to local and municipal matters, unless restricted by the terms of its Charter"), overruled on other grounds by Hartley v. City of Colo. Springs, 764 P.2d 1216, 1225 (Colo. 1988).

¶31 Here, as discussed above, Xcel's complaint alleged that Boulder exceeded its authority under its charter when it passed the Utility Ordinance. Article XIII, section 178 of the City Charter provides that the City of Boulder can establish a public utility "only if it can demonstrate, with verification by a third-party independent expert," that the utility can (1) acquire the electrical distribution system in Boulder;

14

(2) charge rates that do not exceed the rates charged by Xcel at the time of acquisition; (3) produce revenues sufficient to operate the utility and make debt payments, plus an amount equal to twenty-five percent (25%) of the debt payments; (4) produce energy with reliability comparable to Xcel; and (5) create a plan for reduced greenhouse gas emissions and other pollutants and increased renewable energy. Xcel's complaint alleged that Boulder violated these requirements when it passed the Utility Ordinance purporting to create the utility because Boulder had not demonstrated its then-current ability to satisfy those Charter Metrics.

¶32    Without expressing any opinion on the merits of Xcel's claims, we conclude that the foregoing allegations sufficiently stated a viable declaratory judgment claim. See Holderedge v. City of Cleveland, 402 S.W.2d 709, 713–14 (Tenn. 1966) (concluding that the plaintiffs could properly test the validity of an amendment to the city's zoning ordinance under the state's declaratory judgments act and that the state's certiorari process, under which a person aggrieved by a final order or judgment of a board or commission could seek judicial review, was not the plaintiffs' exclusive remedy).

¶33    Finally, we do not agree that the Utility Ordinance was not final for purposes of Xcel's declaratory judgment claim. The parties here all agree that the Utility Ordinance was a legislative, and not a quasi-judicial, act. A legislative act is defined as "[t]he formal product of a legislature or other deliberative body exercising its powers." Legislative Act, Black's Law Dictionary (10th ed. 2014) (cross-referencing to the third meaning of "act"). Under the Boulder City Charter, the City Council is authorized to

15

act by ordinances, and the Charter provides for the effective date of such ordinances. See Boulder, Colo., Charter art. II, §§ 16–18 (2018).

¶34     Here, the parties appear to agree that the Utility Ordinance became effective on May 6, 2014, and no party appears to dispute that this was the formal product of the City Council, exercising its legislative authority. Moreover, in our view, declaratory relief would terminate the uncertainty or controversy alleged in Xcel's complaint and giving rise to this proceeding, namely, whether the adoption of the Utility Ordinance was contrary to the Boulder City Charter. We therefore conclude that the Utility Ordinance was final for purposes of Xcel's declaratory judgment claim, and Boulder has not argued that this declaratory judgment claim, which was filed twenty-eight days after the effective date of the Utility Ordinance, was untimely.

¶35     For these reasons, we conclude that the division erred in determining that due to the purported lack of finality of the Metrics Ordinance and the Utility Ordinance, Xcel's declaratory judgment claim was premature and the district court therefore lacked jurisdiction over that claim.

¶36     In light of this disposition, we need not address whether the division erred in vacating the district court's judgment rather than remanding the case for further findings regarding subject matter jurisdiction. Nor do we need to address Boulder's argument that were this court to affirm the division's analysis of the finality of the ordinances at issue, such a ruling would prevent a city like Boulder from adopting policies in a properly sequential manner. Our conclusion that Xcel has stated a viable

and timely declaratory judgment claim challenging the Utility Ordinance will in no way preclude Boulder or any other city from doing so.

### III. Conclusion

¶37 For these reasons, we conclude that Xcel has stated a viable and timely declaratory judgment claim against Boulder regarding the Utility Ordinance. We therefore reverse the division's judgment and remand this case with instructions that the division return the case to the district court for further proceedings on that claim.