The STATE of Colorado, and the Colorado State Patrol, a Division of the Department of Highways, Petitioners,

v.

Leigh Ann YOUNG, Respondent.

No. 81SC354.

Supreme Court of Colorado.

May 23, 1983.

As Modified on Denial of Rehearings July 5, 1983.

David R. Brougham, Hall & Evans, Denver, for petitioners.

Ted L. Hansen, Rollie R. Rogers, Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the judgment of the Court of Appeals in *Young v. State,* 642 P.2d 18 (Colo.App.1981), reversing the Boulder County District Court's dismissal of a negligence claim against the State of Colorado and the Colorado State Patrol for failure to file timely notice of a claim under section 24–10–109(1), C.R.S. 1973 (1982 Repl. Vol. 10). We affirm.

A Colorado State Patrol officer stopped Leigh Ann Young on Interstate 25 between Castle Rock and Colorado Springs on October 9, 1977, gave her a speeding ticket, and ordered her to appear in the Douglas County Court on November 29, 1977. When Young contacted the Douglas County Court on November 28, she was informed that there were no charges pending against her. She was told the same thing the following day, and consequently did not appear in court as ordered. Unknown to Young, the summons and complaint mistakenly had been filed in the El Paso County Court instead of the Douglas County Court.

On March 1, 1978, an officer of the Lafayette Police Department stopped Young for a license plate violation. The officer discovered through a routine radio check that a warrant had been issued for Young's arrest in El Paso County. The officer arrested Young, advised her that the arrest was based on the warrant from El Paso County, and placed her in the Lafayette City Jail before transferring her to the Boulder County Jail, where she was searched, fingerprinted, photographed, and placed in a cell. Young was confined approximately four hours before she was released on bond.

When released, Young was advised to appear in the El Paso County Court on March 17, 1978. On March 15, Young called the clerk of the El Paso County Court to find out the exact time of her appearance. The clerk of the court read Young the original traffic summons and advised her that the summons directed her to appear in the Douglas County Court. Later, the El Paso County Court Clerk called Young and advised her that the case was being dismissed and that she need not appear.

On March 17, 1978, Young received a copy of the docket sheet from the El Paso County Court which noted that the case was dismissed because it had been filed in the wrong county. On June 13, 1978, Young notified the defendants of her intent to file a claim against them. Young's subsequent complaint charged that the State of Colorado and the Colorado State Patrol negligently misfiled the summons and complaint in El Paso County Court, thereby causing her to be wrongfully arrested in Lafayette on the outstanding warrant.

The defendants moved to dismiss on the grounds that Young had failed to comply with the notice provisions of section 24–10–109, C.R.S.1973, which provided in relevant part:

"(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within 90 days after the date of the discovery of the injury. . . .

"(2) The notice shall contain the following:

"(b) A concise statement of the basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; . . ."[1]

The district court granted the motion on the ground that Young incurred and discovered her injury on March 1, 1978, the date on which she was wrongfully arrested. Young argued that she had not discovered her injury until the receipt of the El Paso County Court docket sheet on March 17, 1978, when she first learned of the incorrect filing of the summons and complaint. The district court disagreed, finding that Young's receipt of the docket sheet only informed her of the rationale behind her March 1 arrest. The district court concluded that the 90-day notice limitation began to run on March 1, and because Young did not give notice to the defendants until June 13, her complaint was barred.

The Court of Appeals reversed, holding that the 90-day period began to run on March 17, 1978, the date Young discovered the basis of her claim. The Court of Appeals noted that section 24–10–109(2)(b), C.R.S.1973, required that the notice contain a concise statement of the basis of the claim. It concluded that logically this could not be done until both the injury and its legal basis were perceived. 642 P.2d at 20.

Thus, the Court of Appeals determined that Young had filed timely notice of her claim under section 24–10–109(1): "The test to be used by a trier of fact, in situations where the knowledge of the injury and the knowledge of causal factors of the injury are not simultaneously perceivable, is when the injured party discovered, or in the exercise of reasonable diligence, should have discovered the injury and its basis as a claim." *Id.*

The "discovery of the injury" language in section 24–10–109 incorporates a notice concept commonly employed in tort litigation. *See City of Aurora v. Bechtel Corp.,* 599 F.2d 382 (10th Cir.1979) (cause of action for professional malpractice against an architect or engineer does not accrue until plaintiff knew or should have known all material facts essential to show the elements of that cause of action); *Exnicious v. United States,* 563 F.2d 418, 420 (10th Cir.1977) (the two year statute of limitations under the Federal Tort Claims Act does not begin to run "until a claimant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action for

---

1. Section 24–10–109(1), C.R.S.1973 (1982 Repl. Vol. 10), now provides that notice must be given within 180 days after the date of the discovery of the injury.

malpractice—damages, duty, breach and causation"); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1974) (statute of limitations in a medical malpractice action runs from the date that a plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the doctor's negligence).[2] While the requirement of prompt notice serves important and particular purposes in actions against governmental entities,[3] the discovery rule does not hinder unduly the effectuation of those purposes. This is especially true where, as here, the notice period is extremely short. Moreover, as this court has recognized, the discovery rule furthers the interest of justice in not foreclosing access to a forum to an injured plaintiff who may not reasonably "understand or appreciate that actionable harm has been done him." *Owens v. Brochner,* 474 P.2d at 606.

The defendants argue that this case should be controlled by *Montgomery v. Polk County,* 278 N.W.2d 911 (Iowa 1979). In *Montgomery,* the Iowa Supreme Court held that the discovery rule did not apply to cases under the Iowa Municipal Tort Claims Act, Iowa Code § 613A (1977). The argument is unpersuasive because the Iowa statutory provision differs from section 24–10–109 in two significant respects. First, Iowa Code § 613A.8 requires notice "within sixty days after the alleged wrongful death, loss or injury"—it does not contain the "discovery of the injury" language of section 24–10–109. Second, in contrast to section 24–10–109(2)(b), the Iowa provision expressly relieves the claimant of the duty to provide the details which make out the basis of the claim. Iowa Code § 613A.8 (1977). In

light of these differences, the defendants' citation of *Montgomery* is inapposite.

This court found application of the discovery rule appropriate in a slightly different factual context in *Brady v. City and County of Denver,* 181 Colo. 218, 508 P.2d 1254 (1973). In *Brady,* a driver who was sued for personal injuries he caused in a collision sought indemnification from the city for Denver General Hospital's alleged negligence in aggravating the pedestrian's condition. We held that the 90-day notice required of claimants against a city by C.R.S.1963, 139–35–1(1) did not commence at the time the secondary injury actually occurred. Rather, the notice period began to run at the time the driver received knowledge of the secondary injury which was the basis of his indemnification claim. "To provide otherwise would impose an unfair burden, if not an impossible requirement, upon an alleged tort-feasor who later seeks indemnification as here. No provision of the law should be interpreted in a way which requires an impossible task." 508 P.2d at 1256.

 The logic of *Owens v. Brochner* and *Brady* applies here. Young's claim that the defendants negligently misfiled the original traffic complaint and summons could not have been brought until Young discovered the alleged negligence upon receipt of the docket sheet on March 17, 1978. The district court's dismissal of Young's complaint appears to be based upon an assumption that Young's case is grounded in the intentional tort of false arrest. Such is not the case. As Young's amended complaint sets out, she is proceeding against the State of Colorado and the Colorado State Patrol in negligence, not against the City of Lafa-

---

**2.** The medical malpractice statute of limitations interpreted in *Owens v. Brochner* required that an action be brought within two years after discovery of the seriousness and character of the injuries and the negligence which gave rise to the action. Section 13–80–105, C.R.S.1973. The statute was amended in 1977 to require the institution of the action within two years after discovery of the injury. Section 13–80–105(1), C.R.S.1973 (1982 Supp.). This court has yet to interpret the discovery of the injury language in amended section 13–80–105(1). *See Brodie*

*v. Mastro,* 638 P.2d 800 (Colo.App.1981) (*cert. granted,* December 28, 1981).

**3.** The requirement of prompt notice is designed to eliminate stale claims and protect defendants from open-ended vulnerability to suit. It also fosters prompt investigations while the evidence is fresh, allows for immediate abatement of dangerous conditions, facilitates prompt settlement of meritorious claims, and makes possible fiscal planning to meet possible liability. *Fritz v. Regents of University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978).

yette or its police department for false arrest. Were this a cause of action against Lafayette for false arrest, the result might be different.

As the Court of Appeals correctly recognized, section 24–10–109(1) does not allow an aggrieved party to wait to file its action until all of the elements of the claim mature. That recognition is the underpinning for the Court of Appeals' decision in *Carroll v. Regional Transportation District*, 638 P.2d 816 (Colo.App.1981) (*cert. denied*, December 28, 1981). In *Carroll*, the plaintiffs' action for malicious prosecution, intentional infliction of emotional harm, and outrageous conduct was dismissed for failure to give notice within the period prescribed by section 24–10–109. The plaintiffs, who were falsely accused of stealing property from a company adjacent to the defendant's facilities, waited until after their acquittal on the theft charges to bring the tort action. The Court of Appeals ruled that although successful termination of the criminal proceedings was a condition precedent to recovery in the malicious prosecution action, all of the elements which formed the basis of their tort claims arose on the night of the plaintiffs' arrest. Therefore, the period of limitations began to run from that date.

Young alleged in her complaint that she did not discover all of the elements which comprise her claim for negligence until March 17, 1978, when she learned that the traffic ticket had been misfiled. The misfiling furnished the causation for her March 1 incarceration. To expect Young to have deduced the element of causation on March 1 in order that the statute of limitations would start to run on that date, as defendant argues, would "impose an unfair burden, if not an impossible requirement" upon Young. The elements of a claim under the Colorado Governmental Immunity Act may not become known to a plaintiff in an order as neat and logical as they might be set out in a complaint or proven at trial. We therefore hold that there must be a reasonable opportunity for a claimant to discover the basic and material facts under-

lying a claim before she is duty-bound to give the statutory notice required by section 24–10–109(1). Based upon the allegations in Young's complaint, the reasonable opportunity for discovery did not arise in this case until March 17, 1978, and Young's notice to the state on June 13, 1978, was therefore given within the 90-day notice requirement of the statute.

The judgment of the Court of Appeals is affirmed, and the case is remanded to the district court with directions to reinstate the complaint.

ROVIRA and LOHR, JJ., dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent, because I believe that the General Assembly meant what it said when it said "after the date of the discovery of the injury." Section 24–10–109, C.R.S.1973.

The respondent was arrested on March 1, 1978. She was told by the arresting police officer that the arrest was based on an outstanding warrant from El Paso County. She alleges that during the process of arrest she suffered "great physical discomfort, embarrassment, and humiliation." This is her injury. The question under section 109 is when did she discover that she had been discomforted, embarrassed, and humiliated. The answer must be on March 1, 1978. *See Young v. State*, 642 P.2d 18 (Colo.App.1981) (Kelly, J., dissenting).

In *Evans v. Board of County Commissioners*, 174 Colo. 97, 482 P.2d 968 (1971), we abolished sovereign immunity as a judicial doctrine. In so doing, we recognized that "[i]f the General Assembly wishes to restore sovereign immunity and governmental immunity, in whole or in part, it has the authority to do so." 174 Colo. at 105, 482 P.2d at 972. We also stated that "[i]f the legislative arm of our government does not completely restore these immunities, then undoubtedly it will wish to place limitations upon the actions that may be brought against the state and its subdivisions. This, too, it has full authority to accomplish." *Id.* This it did.

The legislature could have restored sovereign immunity altogether. Instead, it chose to provide a right of action, while at the same time imposing a rather strict time limitation on the exercise of the right. Time limitations in statutes of creation are to be strictly construed. *Montgomery v. Polk County,* 278 N.W.2d 911 (Iowa 1979), 56 Am.Jur.2d *Municipal Corporations* § 687. They are not merely inconvenient hurdles for a court to clear on the way to its decision on the "merits." The General Assembly has spoken, and it is not for this court to establish a contrary rule merely because it believes that its rule "furthers the interest of justice." [1]

The majority opinion recognizes that the requirement of prompt notice "serves important and particular purposes in actions against governmental entities," but it states that the rule it announces "does not hinder unduly the effectuation of these purposes." I disagree.

It also states that "the requirement of prompt notice is designed to eliminate stale claims and protect defendants from open-ended vulnerability to suit." It is true in this case that, by fortuitous circumstance, the state's vulnerability to suit was extended by only 17 days. However, under the rule announced today, if the respondent had not received the docket sheet for a year and 17 days, she would still have been entitled to bring an action.

Another purpose of the notice requirement is to foster "prompt investigations while the evidence is fresh." Yet, the "basis of the claim" test, at least as applied here, does not foster investigation at all. One may sit back, as did the respondent, and wait until information concerning the basis of the claim falls into his lap.

The notice requirement is also designed to facilitate the state's financial planning. This policy is also hindered by the new test. The open-ended liability that the state now faces cannot do other than impede its ability to estimate its future liabilities.

It is not difficult to predict the use to which this test will be put by imaginative counsel. An action that would have been barred under the statute as written will not be barred if counsel can conceive of a theory of recovery, one of the elements of which has been only recently discovered.[2]

Even if I agreed with the majority that the statute should be rewritten to provide that the notice period should be calculated from "the date of knowledge of the basis of the claim," I would still hold that the respondent's claim is barred. The majority believes that the respondent did not have a reasonable opportunity to discover the basic facts underlying her claim until she received the copy of the docket sheet on March 17. While she did not discover the basis of her claim until March 17, I do not understand how it could be said that she had no reasonable opportunity to do so prior to that date.

The respondent knew on March 1 that she was wrongfully arrested, yet the majority imposes no duty on her to determine what the basis of her claim might be. This is not a case where a person did not know he was injured, or where he knew he was injured but did not know that the injury was wrongful. The respondent knew on March 1 that she had been wrongfully injured and that the injury was due to an arrest warrant issued by El Paso County.

The act that started the chain of events resulting in the respondent's being sent the docket sheet was her telephone call of

---

1. I am at a loss to understand the majority's reliance on *Brady v. City and County of Denver,* 181 Colo. 218, 508 P.2d 1254 (1973). In *Brady,* we held that the notice period commenced against an alleged tort-feasor seeking indemnification when he learned of the secondary injury, not when he learned that the injury might be due to the negligence of the hospital. In essence, we rejected the "basis of the claim" test.

2. The reasoning of the majority opinion, if consistently applied, must lead to the conclusion that notice that does not contain all the elements of a cause of action is inadequate. That is, because the phrase "the basis of the claim" appears but once in the statute, it can have only one meaning. The lenient interpretation for purposes of determining when the notice period commences thus creates a strict requirement concerning the content of the notice.

March 15 to El Paso County to find out when she was supposed to appear. She could have made the call two weeks earlier and thereby discovered the basis of her claim, but she didn't. One would think that being arrested on a warrant whose existence was unknown to the person arrested would constitute notice that something was wrong, and would lead the person arrested to make immediate inquiries.

Even after the respondent discovered the basis of her claim on March 17, after having waited two weeks to make an inquiry, she had two-and-a-half months to act. I do not view this as "an unfair burden, if not an impossible requirement."

I would reverse the judgment of the court of appeals.

I am authorized to say that Justice LOHR joins me in this dissent.