1
 2026 CO 22 Jaimi J. Mostellar, Petitioner v. City of Colorado Springs, a Colorado municipality. Respondent No. 24SC761Supreme Court of Colorado, En BancApril 13, 2026
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA1908
 
 
          Judgment
 Affirmed
 
 
          
 Attorneys for Petitioner: Kane Law Firm, P.C. Mark H. Kane
 Colorado Springs, Colorado
 
 
          
 Attorneys for Respondent: Marc Smith, Acting City Attorney W.
 Erik Lamphere, Division Chief Colorado Springs, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Municipal League: Robert
 D. Sheesley Rachel Bender Denver, Colorado
 
 2
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE BLANCO
 joined.
 
 3
 
          
 OPINION
 
 
          
 GABRIEL JUSTICE
 
 
          ¶1
 We granted certiorari to consider whether (1) the court of
 appeals division below erred in reversing the district
 court's order denying the City of Colorado Springs'
 motion to dismiss, in which the district court had found that
 the deadline to provide notice under the Colorado
 Governmental Immunity Act ("CGIA") did not begin to
 run until the City of Manitou Springs informed Jaimi J.
 Mostellar of the intergovernmental agreement that made
 Colorado Springs potentially liable for her accident; and (2)
 the CGIA should require strict compliance when such
 compliance is impossible based on one public entity's
 failure to inform the claimant of the potential liability of
 another public entity.
 
 
          ¶2
 Addressing the second issue first, we conclude that this case
 does not implicate a scenario in which strict compliance with
 the CGIA was impossible or a defendant prevented strict
 compliance by misleading a plaintiff. In this case, Colorado
 Springs, which was the entity entitled to notice, did nothing
 to inhibit Mostellar's compliance with the CGIA.
 Accordingly, strict compliance with the CGIA's plain
 terms was required.
 
 
          ¶3
 Having thus decided, we turn to the first issue on which we
 granted certiorari, and we conclude that under section
 24-10-109(1), C.R.S. (2025), of the CGIA, the notice period
 began to run on August 26, 2021, the date on which Mostellar
 was injured, not on the date that Manitou Springs informed
 her of the
 
 4
 
 intergovernmental agreement. Accordingly, Mostellar's
 notice of claim was untimely, and the division correctly
 determined that her claim must be dismissed.
 
 
          ¶4
 We therefore affirm the division's judgment.
 
 
          I.
 Facts and Procedural History
 
 
          ¶5
 Mostellar alleged that she was injured on a public sidewalk
 in Manitou Springs on August 26, 2021, when she tripped and
 fell over the base of an old bus stop sign that had been
 removed. She then provided Manitou Springs with timely notice
 of her injury pursuant to section 24-10-109(1) of the CGIA,
 which requires "person[s] claiming to have suffered an
 injury by a public entity" to file written notice with
 that public entity "within one hundred eighty-two days
 after the date of the discovery of the injury."
 
 
          ¶6
 Over the ensuing months, Manitou Springs never indicated that
 it was not the real party in interest. In April 2023,
 however, over a year and a half after Mostellar's fall,
 Manitou Springs informed Mostellar, for the first time, that
 pursuant to an intergovernmental agreement between it and
 Colorado Springs, Colorado Springs was responsible for the
 condition of the sign (and, thus, the condition of the
 sidewalk on which Mostellar was injured).
 
 
          ¶7
 Forty days later, on May 30, 2023, Mostellar provided
 Colorado Springs with notice under the CGIA. By that point,
 however (and even by the day on
 
 5
 
 which Mostellar was advised of Colorado Springs'
 involvement), section 24-10-109(1)'s 182-day notice
 period had long passed.
 
 
          ¶8
 Mostellar thereafter brought an action against both Colorado
 Springs and Manitou Springs, asserting claims for premises
 liability and negligence, stemming from the existence of a
 "significant trip hazard" on the sidewalk on which
 Mostellar had fallen. Colorado Springs responded by moving to
 dismiss on the ground that Mostellar had not provided it with
 timely notice under the CGIA. In support of this contention,
 Colorado Springs argued, among other things, that equitable
 defenses, such as tolling, did not overcome the CGIA's
 182-day notice period and that Mostellar's failure to
 comply with that statutory deadline required the court to
 dismiss her complaint for lack of subject matter
 jurisdiction.
 
 
          ¶9
 Mostellar responded that her notice to Colorado Springs was
 timely under the CGIA, because, in her view, "the
 statute of limitations with respect to Defendant Colorado
 Springs did not begin to run until Plaintiff knew of the
 city's potential liability as the real party in interest
 for the cause of her injury." In support of this
 argument, Mostellar asserted that under our decision in
 Finnie v. Jefferson County School District R-1, 79
 P.3d 1253, 1256-58 (Colo. 2003), determinations of compliance
 with section 24-10-109(1) should consider whether the
 purposes of the statute—namely, to allow public
 entities to investigate and remedy dangerous conditions
 promptly, to foster prompt settlement of
 
 6
 
 meritorious claims, to make necessary arrangements to cover
 potential liability, and to prepare to defend
 themselves—were satisfied. She further contended that
 when a public entity has engaged with a plaintiff in a way
 that thwarts those aims, service on that entity is not
 necessary and principles of agency and equity should apply.
 And she argued that a claimant like her must be afforded a
 reasonable opportunity to discover the basic and material
 facts underlying a claim before having to provide the
 statutorily required notice. This was particularly true here,
 given that she asserts that she had no means of discovering
 the intergovernmental agreement other than through Manitou
 Springs and Manitou Springs had not advised her of that
 agreement until approximately a year and a half after
 Mostellar had provided it with notice. Mostellar thus
 contended that her claim was "within the 182 day
 requirement upon discovering the basic and material facts
 concerning Colorado Springs' responsibility."
 
 
          ¶10
 The district court ultimately denied Colorado Springs'
 motion to dismiss. Although the court believed that
 Finnie was distinguishable because it implicated
 section 24-10-109(3), rather than section 24-10-109(1), of
 the CGIA, the court agreed with Mostellar that under
 State v. Young, 665 P.2d 108, 109-11 (Colo. 1983),
 the CGIA's notice period did not begin to run until she
 learned not only of her injury but also of who caused it. In
 the court's view, Mostellar did not obtain the latter
 information until Manitou Springs informed her of the
 intergovernmental
 
 7
 
 agreement that purportedly rendered Colorado Springs
 responsible for the accident. This was because the incident
 happened on a public sidewalk in Manitou Springs and, the
 court opined, Mostellar could not reasonably have been
 expected to know that Colorado Springs would have had
 potential liability. Specifically, the court discerned no
 reason Mostellar would have been expected to learn of the
 intergovernmental agreement between the two cities.
 Accordingly, because Mostellar had been reasonably diligent
 in investigating her claim and giving timely notice to
 Manitou Springs, and because Colorado Springs had not
 suggested that the intergovernmental agreement was widely
 known or that Mostellar, with reasonable diligence, could or
 should have discovered it before Manitou Springs disclosed
 it, the court denied Colorado Springs' motion to dismiss.
 
 
          ¶11
 Colorado Springs then appealed, and in a unanimous,
 unpublished decision, the division below disagreed with the
 district court and reversed its judgment. Mostellar v.
 City of Colo. Springs, No. 23CA1908, ¶ 1 (Oct. 24,
 2024). The division began by noting that "[t]he 182-day
 deadline is jurisdictional, and because it is a non-claim
 provision, it cannot be waived, tolled, or estopped."
 Id. at ¶ 10. Accordingly, a claimant's
 failure to comply strictly with the CGIA's notice
 requirement mandates dismissal of her complaint. Id.
 Next, the court observed that "[t]he CGIA's notice
 period begins when a claimant 'knew or, through the
 
 8
 
 exercise of reasonable diligence, should have known' that
 she was wrongfully injured," although "[t]he
 claimant need not yet know the cause of the injury or the
 extent of the damage." Id. at ¶ 11
 (quoting Trinity Broad. of Denver, Inc. v. City of
 Westminster, 848 P.2d 916, 923 (Colo. 1993)). Lastly,
 the division took issue with the district court's
 reliance on Young because that case predated the
 legislature's 1986 amendment to section 24-10-109(1),
 which responded to our opinion in Young by
 clarifying that the CGIA's notice period is triggered by
 claimants' discovery of their injury, not their discovery
 of the legal theory underlying their claims. Id. at
 ¶ 14.
 
 
          ¶12
 Applying these legal principles to the facts before it, the
 division concluded that it would have been immediately
 apparent that Mostellar's fall and injury were the result
 of negligence that met the CGIA's definition of injury.
 Id. at ¶ 16. Thus, Mostellar's time to
 provide notice began running on the date of her injury.
 Id. And because she did not provide the required
 notice until 602 days after her injury, she had not strictly
 complied with the CGIA's notice deadline, and her
 complaint should have been dismissed for lack of subject
 matter jurisdiction. Id. at ¶ 18.
 
 
          ¶13
 Judge Freyre specially concurred. Id. at
 ¶¶ 22-26 (Freyre, J., specially concurring).
 Although she agreed with the majority's reasoning and
 application of the law, she expressed concern regarding the
 policy implications of the division's decision, noting
 that the facts of this case contradict the prompt
 
 9
 
 investigation policy underlying the CGIA's notice
 requirements. Id. at ¶¶ 22, 25. She thus
 urged the General Assembly to consider statutory
 modifications that would preclude public entities from
 misleading plaintiffs regarding how to comply with the
 CGIA's notice provisions and then assert a defense of
 noncompliance. Id. at ¶ 26.
 
 
          ¶14
 Mostellar thereafter petitioned this court for certiorari
 review, and we granted her petition.
 
 
          II.
 Analysis
 
 
          ¶15
 We begin by setting forth the applicable standard of review
 and principles of statutory construction. Next, we address
 the second issue on which we granted certiorari, namely,
 whether the CGIA requires strict compliance with its notice
 provision when such compliance is impossible based on one
 public entity's failure to inform a claimant of the
 potential liability of another public entity. Concluding that
 this case implicates neither impossibility of compliance nor
 any misleading conduct by Colorado Springs, we determine that
 the CGIA demanded strict compliance here. We then address
 whether Mostellar strictly complied with the CGIA's
 notice requirement and conclude that she did not.
 
 
          A.
 Standard of Review and Principles of Statutory
 Construction
 
 
          ¶16
 The CGIA is a non-claim statute that raises a jurisdictional
 bar if notice is not given within the applicable time period.
 Trinity, 848 P.2d at 923. When, as
 
 10
 
 here, the parties dispute only the characterization of a
 plaintiff's complaint and not the jurisdictional facts
 alleged therein, we review de novo a court's ruling on a
 C.R.C.P 12(b)(1) motion to dismiss for lack of subject matter
 jurisdiction. City of Boulder v. Pub. Serv. Co. of
 Colo., 2018 CO 59, ¶ 14, 420 P.3d 289, 293.
 
 
          ¶17
 Statutory construction presents a question of law that we
 review de novo. Pub. Serv. Co. of Colo. v. Outdoor Design
 Landscaping LLC, 2026 CO 6, ¶ 23, 583 P.3d 778,
 783. In interpreting statutory provisions, we seek to
 determine and effectuate the intent of those who adopted
 those measures. Id. To do so, we begin with the
 language employed, and we give words and phrases their plain
 and ordinary meanings. Id.
 
 
          ¶18
 If the language of a provision is unambiguous, then we apply
 it as written and need not turn to other tools of
 construction. Id. at ¶ 24. If, however, the
 provision is ambiguous, then we may consider the intent of
 those who adopted the provision, the circumstances of its
 adoption, and the possible consequences of different
 interpretations. Id. A provision is ambiguous when
 it is reasonably susceptible of multiple interpretations.
 Id.
 
 
          B.
 Whether Strict Compliance Was Required
 
 
          ¶19
 Section 24-10-109(1) provides, in pertinent part:
 
 
 Any person claiming to have suffered an injury by a public
 entity . . ., whether or not by a willful and wanton act or
 omission, shall file a written notice as provided in this
 section within one hundred eighty-two days after the date of
 the discovery of the injury,
 
 11
 
 regardless of whether the person then knew all of the
 elements of a claim or of a cause of action for such injury.
 Compliance with the provisions of this section shall be a
 jurisdictional prerequisite to any action brought under the
 provisions of this article, and failure of compliance shall
 forever bar any such action.
 
 
 (Emphasis added.)
 
 
          ¶20
 This language unambiguously requires written notice within
 182 days after the date the claimant discovers their injury,
 regardless of whether they knew all of the elements of their
 claim. The language further makes clear that strict
 compliance with the statute is a jurisdictional prerequisite
 to any action brought under the CGIA. Thus, we have held,
 "A claimant's failure to comply with the
 requirements of section 24-10-109(1) requires a court to
 dismiss the action for lack of subject-matter
 jurisdiction." Mesa Cnty. Valley Sch. Dist. No. 51
 v. Kelsey, 8 P.3d 1200, 1206 (Colo. 2000). And we have
 further opined that section 24-10-109(1) is a non-claim
 statute, and, therefore, unlike an ordinary statute of
 limitations, it is "not subject to equitable defenses
 such as waiver, tolling, or estoppel." Id.;
 accord City & Cnty. of Denver v. Crandall, 161
 P.3d 627, 633 (Colo. 2007).
 
 
          ¶21
 Notwithstanding the foregoing, Mostellar asserts that (1)
 section 24-10-109(1) includes a discovery rule that required
 her to know not only of her injury but also of Colorado
 Springs' involvement in it before her time to provide
 notice began to run; (2) when compliance with the statutory
 deadline was impossible due to Manitou Springs' delay in
 disclosing Colorado Springs'
 
 12
 
 involvement, principles of agency and equity should apply;
 and (3) requiring strict compliance leads to absurd results
 when, as here, Mostellar could not ascertain the identity of
 the governmental entity to whom she was to provide notice
 under the CGIA. We address and reject each of these arguments
 in turn.
 
 
          ¶22
 First, as to Mostellar's argument that section
 24-10-109(1) includes a discovery rule that required her to
 know both of her injury and of Colorado Springs'
 involvement in it before the notice period began to run, the
 statutory language belies this contention. As noted above,
 the statute makes clear that discovery of the injury alone is
 sufficient to trigger the running of the notice period.
 § 24-10-109(1).
 
 
          ¶23
 Young, 665 P.2d at 111, on which Mostellar relies,
 does not persuade us otherwise. Although in Young,
 we held that a claimant must have a reasonable opportunity to
 discover the basic and material facts underlying their claim
 before being required to provide notice under the CGIA,
 id., the legislature amended section 24-10-109(1) in
 1986 to override that decision, see Reg'l Transp.
 Dist. v. Lopez, 916 P.2d 1187, 1193 (Colo. 1996). Thus,
 since the 1986 amendment, we have been clear that the
 CGIA's "notice period is triggered when a claimant
 has only discovered that he or she has been wrongfully
 injured." Trinity, 848 P.2d at 923.
 
 
          ¶24
 Second, as to Mostellar's contention that because
 compliance with the statutory deadline was impossible due to
 Manitou Springs' delay in disclosing
 
 13
 
 Colorado Springs' involvement, principles of agency and
 equity should apply, we initially note that Mostellar has
 provided no evidence to support her claim of impossibility of
 compliance. For example, she has not explained why she could
 not have submitted an open records request or researched how
 transit systems are organized in Manitou Springs, either of
 which could have revealed Colorado Springs' involvement.
 Accordingly, the premise of Mostellar's argument fails.
 
 
          ¶25
 In any event, Finnie, on which Mostellar relies to
 assert that equitable principles should excuse her
 noncompliance here, does not support her contention. In
 Finnie, 79 P.3d at 1256, we differentiated between
 section 24-10-109(1) and section 24-10-109(3), the latter of
 which sets forth where a CGIA notice is to be filed. We
 observed that section 24-10-109(1) creates a
 "jurisdictional prerequisite to suit that therefore
 requires strict compliance with its terms," while
 section 24-10-109(3), in contrast, "provid[es] a
 statutory defense to claims rather than creating a
 jurisdictional prerequisite to suit." Finnie,
 79 P.3d at 1256. Thus, we said, with regard to section
 24-10-109(3) only, that a court may make "case-by-case
 determinations of compliance, which consider principles of
 agency and equity, the purposes of the statute, and concerns
 of protecting plaintiffs from misrepresentations by
 governmental entities." Finnie, 79 P.3d at
 1258. We opined that this standard "is best described as
 substantial compliance." Id.
 
 14
 
          ¶26
 Even if Finnie's substantial compliance standard
 for section 24-10-109(3) could theoretically apply under the
 circumstances presented here, which involve section
 24-10-109(1), and even if Mostellar's compliance were
 truly impossible, Finnie still would not assist
 Mostellar because Colorado Springs, the party that was
 entitled to the CGIA notice at issue in this case, did
 nothing to impede Mostellar from providing timely notice. In
 Finnie, counsel for a plaintiff who had been injured
 in a school contacted the school district's risk
 management department to determine where a CGIA notice of
 claim should be filed. Id. at 1254. Counsel was told
 by an employee of the department that the department was
 authorized to receive the CGIA notice on the school
 board's behalf, and counsel submitted a timely notice of
 claim as directed, which the department acknowledged
 receiving. Id. at 1254-55. Thereafter, the plaintiff
 filed a tort action against the school district, but the
 district moved to dismiss the complaint, arguing that the
 plaintiff had failed to send notice to the school board or
 its attorney, as required by the CGIA. Id. at 1255.
 
 
          ¶27
 The district court granted the school district's motion,
 concluding that strict compliance with the statute was
 required, and a division of the court of appeals affirmed.
 Id. We, however, granted review and reversed.
 Id. In so ruling, we observed that the purposes
 behind section 24-10-109(3) are critical in determining
 whether a claimant has complied with that statute.
 Id. at 1258. We then opined,
 
 15
 
 "Allowing public entities to mislead plaintiffs about
 how to meet the requirements of the notice provision, and
 then to assert the affirmative defense of noncompliance, is
 beyond the legitimate purposes of the [C]GIA's notice
 provision." Id. Accordingly, we deemed it
 appropriate in such circumstances to apply a substantial
 compliance standard that allowed a court to consider, among
 other things, principles of agency and equity and concerns of
 protecting plaintiffs from misrepresentations by governmental
 entities. Id.
 
 
          ¶28
 Here, in contrast, Colorado Springs did not mislead Mostellar
 in any way. Nor did it do anything to prevent her from filing
 a timely notice of claim. Indeed, Mostellar does not assert
 that Colorado Springs engaged in any such conduct. Instead,
 she focuses on what she believes to be Manitou
 Springs' misconduct in failing to disclose Colorado
 Springs' involvement on a timely basis. But any
 misconduct by Manitou Springs is irrelevant to
 Mostellar's statutory duties toward Colorado Springs, the
 party entitled to notice here.
 
 
          ¶29
 Finally, as to Mostellar's assertion that strict
 compliance with the applicable statutory deadline would lead
 to absurd results because she could not ascertain the proper
 entity to whom she was to give notice, as noted above,
 Mostellar has provided no evidence to establish that she
 could not ascertain this information. Nor do we perceive any
 absurdity in applying section 24-10-109(1) as the legislature
 plainly wrote it. As we observed above, the statute is clear
 in its
 
 16
 
 mandates, and we view strict adherence with those mandates as
 consistent with the legislature's intent to allow public
 entities to investigate and remedy dangerous conditions
 promptly, to foster prompt settlement of meritorious claims,
 to make fiscal arrangements to cover any potential liability,
 and to prepare to defend against claims. Jefferson Cnty.
 Health Servs. Ass'n v. Feeney, 974 P.2d 1001, 1003
 (Colo. 1998).
 
 
          ¶30
 For these reasons, we conclude that on the facts of this
 case, section 24-10-109(1) required strict compliance with
 its deadline to file a notice of claim.
 
 
          ¶31
 Having so concluded, we turn to whether Mostellar complied
 with her statutory duties here.
 
 
          C.
 Application
 
 
          ¶32
 As noted above, by its plain terms, section 24-10-109(1)
 requires a person claiming to have suffered any injury by a
 public entity to provide written notice to that entity within
 182 days after the date the person discovers their injury,
 regardless of whether they knew all of the elements of their
 claim. The statute further makes clear that strict compliance
 with its terms is a jurisdictional prerequisite to any action
 brought under the CGIA. Id. Thus, a plaintiff's
 failure to comply with section 24-10-109(1)'s deadline
 requires a court to dismiss the action for lack of subject
 matter jurisdiction. Mesa Cnty. Valley Sch. Dist. No.
 51, 8 P.3d at 1206.
 
 17
 
          ¶33
 Here, Mostellar unquestionably knew of her injury on the day
 of her accident, August 26, 2021. Accordingly, she had 182
 days from that date to provide the requisite notice to
 Colorado Springs. It is undisputed, however, that she did not
 provide notice by the statutory deadline.
 
 
          ¶34
 For these reasons, like the division below, we conclude that
 section 24-10-109(1) required the dismissal of
 Mostellar's claims against Colorado Springs.
 
 
          ¶35
 In so concluding, we acknowledge, as did the division below,
 see Mostellar, ¶ 18 n.1; id. at
 ¶¶ 22-26 (Freyre, J., specially concurring), that
 the result that we reach today may, to some, seem harsh and
 inequitable because Mostellar and her counsel appear to have
 acted in good faith and tried to comply with the CGIA's
 mandates, while Manitou Springs delayed disclosing the
 intergovernmental agreement for a lengthy period of time.
 Although we are not unsympathetic to this argument, we are
 constrained to follow the plain language of section
 24-10-109(1), and any effort to remedy inequity that might
 result from the application of the statute's plain
 language is more appropriately directed to our General
 Assembly.
 
 
          III.
 Conclusion
 
 
          ¶36
 For these reasons, we conclude that, even if principles of
 agency and equity could apply here, this case does not
 involve a scenario in which strict compliance with the CGIA
 was impossible or a defendant prevented a plaintiff's
 strict
 
 18
 
 compliance by misleading the plaintiff. Accordingly, strict
 compliance with the CGIA's notice period was required,
 and, under the plain language of section 24-10-109(1),
 Mostellar's time to provide the requisite notice began to
 run on the date she was injured, August 26, 2021. Because
 Mostellar did not provide Colorado Springs with the
 statutorily required notice within 182 days of that date, her
 claim was untimely, and, as the division below concluded,
 dismissal was required.
 
 
          ¶37
 We therefore affirm the division's judgment.